IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-417 |
| | § | C.A. No. C-06-407 |
| WALTER JAMES WEBER, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
RESPONDENT'S MOTION TO DISMISS,
DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Walter James Weber's ("Weber") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 33),[1] received by the Clerk on September 21, 2006. The Court ordered the government to respond, and the government filed a combined response and motion to dismiss on January 5, 2007. (D.E. 42, 43.) Weber filed a reply on February 1, 2007 (D.E. 44), which the Court has also considered.

For the reasons set forth herein, the Court GRANTS the government's motion to dismiss (D.E. 43), and DISMISSES Weber's § 2255 motion. The Court also DENIES Weber a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Dockets entries refer to the criminal case.

1

## II.  FACTS AND PROCEEDINGS

A.     **Summary of the Offense**[2]

On March 18, 2005, agents with Immigration and Customs Enforcement in Corpus Christi received information that a man from Michigan was going to use a trailer to transport marijuana.  The agents also received information that James Garcia, an individual known to be a broker for narcotic smugglers, may be involved.  Surveillance was set up on Garcia's residence in Corpus Christi.  Garcia was observed leaving his residence driving a brown Tahoe.  He drove to the Wal-Mart store in the Five Points area and met an individual later identified as Weber, who was driving an RV with Michigan license plates.  Garcia attached a black motorcycle trailer that was registered to Weber to the Tahoe.  The two men then transported the trailer to Garcia's residence where the trailer was left.

The following day, the Tahoe driven by Garcia returned to the Wal-Mart parking lot and Weber was observed exiting the Tahoe.  After dropping off Weber, Garcia returned to his residence.  On March 22, 2005, a white Suburban and Chevrolet truck arrived at Garcia's residence.  The driver of the Suburban was observed traveling back and forth from the Suburban to the trailer.  The Suburban then left Garcia's residence and traveled to the parking lot at Wal-Mart where Weber entered the Suburban.  The vehicle then returned to Garcia's residence, where the trailer was hooked up to the Suburban.  The Suburban then returned back to Wal-Mart, where Weber hooked the trailer to his RV.

---

[2] The information in this section is derived from Paragraphs 4 through 7 of the Presentence Investigation Report.

As Weber proceeded northbound on U.S. Highway 37 in the RV pulling the trailer, a traffic stop was conducted by a Nueces County Sheriff's deputy and a drug service canine was utilized. The canine alerted to the trailer and Weber said to the deputy "Well you got me." A search of the trailer revealed eleven trash bags containing a total of approximately 395 kilograms of marijuana. Weber stated that he knew the marijuana was in the trailer and he was going to transport the marijuana to Detroit, Michigan for distribution. Weber stated that he would receive instructions as to the delivery location once he arrived in Detroit.

A search of the RV also revealed a box sealed shut with tape. The box contained a 9 mm handgun, a .22 caliber handgun and a .22 caliber magnum handgun.

**B.   Criminal Proceedings**

On July 13, 2005, Weber was charged in a single-count indictment with possession with intent to distribute approximately 395 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). (D.E. 10.) Weber pleaded guilty to the indictment on October 19, 2005. There was no written plea agreement. The Court ordered the United States Probation Office to prepare a Presentence Investigation Report (D.E. 24), and Weber did not file any objections.

The PSR calculated his base offense level as a 26. It gave him a two-level reduction because he qualified for safety valve relief, and reduced his offense level by three levels for acceptance of responsibility, resulting in a total offense level of 21. (PSR at ¶¶ 12-21.) Weber had no criminal history, resulting in a criminal history category of I. (PSR at ¶¶ 22-26.) His resulting guideline range was 37 to 46 months. (PSR at ¶ 36.)

On January 5, 2006, the Court sentenced Weber to 25 months custody, departing downward due to Weber's advanced age and poor health, as well as for other reasons set forth on the record. (D.E. 40, Sentencing Transcript ("S. Tr.") at 32-34.) The Court also imposed a three-year term of supervised release and a $100 special assessment. (S. Tr. at 33, 34.) Final judgment was entered on January 9, 2006. Weber did not appeal.

The Clerk received Weber's motion pursuant to 28 U.S.C. § 2255 on September 21, 2006. (D.E. 33.) It is timely.

### III. MOVANT'S ALLEGATIONS

In his § 2255 motion, Weber lists only two grounds for relief. First, he claims that the Court lacked jurisdiction over his criminal case. Second, he claims that his counsel was constitutionally ineffective for failing to object to the jurisdictional defect. Neither of these claims are meritorious and both are subject to dismissal.

### IV. DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and

would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

## B.     Challenge to Court's Jurisdiction

Weber's first claim is easily resolved. As noted, Weber argues that this Court did not have jurisdiction over the charges against him because the Sixth Amendment requires that the district where a trial occurs "shall have been previously ascertained by law." He seems to be arguing that because the land where the offense occurred, Texas, had not been ceded to the United States, the United States did not have jurisdiction over his offense. This argument is wholly without merit. Indeed, the Fifth Circuit has clearly and succinctly rejected this precise argument in the past. United States v. Madkins, 14 F.3d 277, 278-79 (5th Cir. 1994) ("Under 18 U.S.C. § 3231, '[d]istrict courts have jurisdiction over offenses against the laws of the United States'" and "[t]he suggestion that because the offense occurred within the State of Texas the federal government is rendered powerless requires no response.") (quoting United States v. Drobny, 955 F.2d 990, 997 (5th Cir. 1992)).

In his reply, he also contends that 18 U.S.C. § 3231 does not provide jurisdiction because it refers to the "district courts of the United States," and "not just any 'district court' as the government suggests." (D.E. 44 at 3, 4.) Again, this argument "requires no response." See Madkins, 14 F.3d at 278-79. The jurisdiction of this Court over offenses against the laws of the United States is well-established. See id. Weber's arguments to the contrary are frivolous. This Court properly exercised jurisdiction over Weber's criminal

5

case.

## C.     Ineffective Assistance of Counsel

Weber's ineffective assistance of counsel claim is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.   Id.   This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

For the reasons set forth in the preceding section, this Court clearly had jurisdiction over the charges against Weber, and there was no basis for objecting to this Court's jurisdiction.  Accordingly, counsel was not deficient for failing to raise a frivolous argument, nor is there any prejudice to Weber as a result of such failure. United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless

argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Accordingly, Weber's ineffective assistance of counsel claim fails.

For the above reasons, the government's motion to dismiss is GRANTED, and Weber's § 2255 motion is DENIED.

### D.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Weber has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Weber's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Weber is not entitled to a COA as to his claims.

## V. CONCLUSION

For the above-stated reasons, the Court GRANTS the government's motion to dismiss (D.E. 43) and DISMISSES Weber's motion. (D.E. 33.) The Court also DENIES Weber a Certificate of Appealability.

ORDERED this 30th day of March, 2007.

_____
HAYDEN HEAD
CHIEF JUDGE